UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

L'TANYA SILAS,

Plaintiff,

v.

Case No. 26-cv-0501-bhl

TOUCHPOINT SUPPORT SERVICES LLC,

Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Plaintiff L'Tanya Silas, proceeding without an attorney, brings claims against her former employer, Defendant Touchpoint Support Services LLC. (ECF No. 10.) On September 8, 2026, Touchpoint filed a motion to compel arbitration pursuant to an arbitration agreement it contends Silas signed as a condition of her employment. (ECF No. 21.) In its motion, Touchpoint also asks the Court to stay these proceedings pending the resolution of the parties' arbitration. (*Id.*) Because Silas does not dispute that she entered into a binding arbitration agreement that covers her claims, Touchpoint's motion to compel arbitration will be granted. The Court will also stay the case pending resolution of the arbitration.

**BACKGROUND**[1]

L'Tanya Silas is a Milwaukee resident. (ECF No. 10 at 1.) Touchpoint Support Services LLC is Silas's former employer. (*Id.*) Silas has worked at Touchpoint since 2012. (*Id.*) Silas's most recent position at Touchpoint was as a first Shift Lead at St. Joseph Hospital, and her duties in that role included "scheduling, work assignments," cleaning, inspecting patient areas, "ATP testing," and coordinating between managers and other departments. (*Id.* at 1–3.) Christopher Stoll is another Touchpoint employee, and one of Silas's managers. (*Id.* at 1.)

[1] These background allegations are derived from Silas's second amended complaint, (ECF No. 10), the allegations in which are presumed true at the pleading stage, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007). In deciding this motion, the Court has also considered a signed arbitration agreement submitted by Touchpoint, (ECF No. 22-1), which Silas acknowledges she signed. (ECF No. 23 at 1.)

Silas raises claims related to Stoll's actions following a disagreement between the two. Silas alleges that she had previously used intermittent Family and Medical Leave Act (FMLA) leave due to a cervical spine condition that limits her ability to lift and bend, among other tasks. (*Id.*) Following a disagreement with Silas, Stoll reassigned her to a new role that did not comply with her limitations. (*Id.*) In response, Silas informed Stoll of her limitations and intermittent leave and referred him to her doctor's explanation of her limitations in her FMLA recertification paperwork. (*Id.*) Stoll does not appear to have changed her reassignment.

Silas later attempted to resolve the disagreement with a manager, but the attempt was also unsuccessful, and Stoll then retaliated by telling Silas not to come in for previously scheduled overtime and investigating her FMLA restrictions. (*Id.* at 1–2.) Silas also attempted to transfer to a different location, after which Stoll placed her on continual leave. (*Id.* at 5.) Roughly a month later, Stoll told human resources he could not accommodate Silas's restrictions. (*Id.* at 6.) Over four months later, Silas received an email from Touchpoint's human resources department, indicating it was investigating Stoll's behavior. (*Id.* at 6.) She also received an email offering her a different position at St. Joseph's hospital, also supervised by Stoll, and with unfavorable hours. (*Id.* at 7.) She declined the offer. (*Id.*) Two months after that, Silas received another email stating that appropriate actions had been taken about her complaint and that she would be contacted about returning to her old position; she was not contacted. (*Id.*) Instead, she was offered a different job at an unspecified location but was never actually told the location. (*Id.*) Touchpoint terminated Silas's employment on December 3, 2025. (*Id.*)

Silas's second amended complaint asserts claims for FMLA interference, retaliation, and discrimination, as well as Wisconsin common law claims for wrongful termination and intentional infliction of emotional distress. (*Id.* at 8.) In response, Touchpoint has filed a motion to compel arbitration. (ECF No. 21.) In support, it included a document titled "Arbitration Agreement for Associates" bearing Silas's signature dated September 16, 2020. (ECF No. 22-1.) The last paragraph, in bold and all capital letters, specifies that the signer has read, understood, and agreed to the above terms, and that the agreement "requires [the signer] to arbitrate any and all disputes that arise out of [the signer's] employment. Do not sign until you have read the above agreement." (*Id.*) Silas acknowledges that she signed the arbitration agreement on September 16, 2020. (ECF No. 23 at 1.) She argues instead that a different document, the first page of the Touchpoint

employee handbook, which states it is not a contract, precludes the enforcement of the binding arbitration agreement. (ECF Nos. 23 & 25.)

**ANALYSIS**

The Federal Arbitration Act (FAA) provides that private agreements that mandate arbitration are "valid, enforceable, and irrevocable," and requires courts to enforce them as they enforce other contracts. 9 U.S.C. §§1, 2. The FAA also empowers parties, and courts, to compel arbitration. 9 U.S.C. §4. ("A party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement. . . may petition the United States district court . . . [which] . . . would have jurisdiction under title 28 . . . for an order directing that such arbitration proceed.") The statute provides that district courts shall stay an arbitrable action pending the outcome of arbitration. 9 U.S.C. §§3, 4.

Under the FAA, a court must compel arbitration when the movant shows a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate by the non-movant. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005); 9 U.S.C. §4; *Sharif v. Wellness Int'l Network*, *Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004). The party moving to compel arbitration bears the initial burden of showing a written agreement to arbitrate. *See A.D. v. Credit One Bank*, *N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). If the movant carries that initial burden, then the non-movant must identify a triable issue of fact as to the agreement's existence, or whether the parties validly entered into the agreement. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). In the Seventh Circuit, the Court must accept the non-movant's evidence as true and draw inferences in their favor. *Id.* at 735. But "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests" and must "identify specific evidence in the record demonstrating a material factual dispute." *Id.* Once an enforceable arbitration agreement is shown to exist, questions as to the scope of arbitrable issues should be resolved in favor of arbitration. *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017).

Whether a binding arbitration agreement exists is determined under principles of state contract law. 9 U.S.C. §2; *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). Under Wisconsin law, employment contracts are treated like any other contract, and an employer's promise to arbitrate in exchange for an employee's promise to also do so is sufficient consideration to support an arbitration agreement. *Tinder*, 305 F.3d at 734; *Ferraro v. Koelsch*, 368 N.W.2d

666, 671–72 (Wis. 1985); *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999). Wisconsin law also presumes arbitration provisions are valid. *Wis. Auto Title Loans, Inc. v. Jones,* 714 N.W.2d 155, 163 (Wis. 2006). In addition, employment discrimination claims arising under Title VII are issues that can be subject to arbitration. *Tinder*, 305 F.3d at 733.

Touchpoint contends that Silas signed a valid agreement to arbitrate her claims, that her claims are within the scope of the agreement, and that she has not agreed to arbitrate, as evidenced by filing a federal lawsuit. (ECF No. 22 at 4–6.) In support, it has filed the parties' arbitration agreement, which provides for both parties' waiver of their respective rights to bring claims in a court of law and their agreement to submit any claims to binding arbitration under the FAA. (ECF No. 22-1.) Silas acknowledges she signed the arbitration agreement. (ECF No. 23 at 1.) The arbitration agreement specifies that its scope includes "all disputes that may arise out of or be related in any way to [Silas's] employment," including claims based on federal statutes, and includes language clarifying that employees may still pursue proceedings before the Equal Employment Opportunity Commission, but that "claim[s] following the exhaustion of such administrative remedies . . . would be subject to the provisions of this Agreement." (ECF No. 22-1.) As described above, its terms are summarized in bold and capital letters immediately above the signature line, with a warning that the signer should not sign until she has read the agreement. (*Id.*) Because Touchpoint has produced its agreement with Silas that requires arbitration, Silas acknowledges she entered that agreement by signing it, and her claims are clearly within the scope of the agreement, Touchpoint's motion to compel arbitration will be granted.

Silas has filed several responses, but none present a valid basis to deny enforcement of the arbitration agreement.[2] She first states that she did not intend to sign a binding contract with Touchpoint. (ECF No. 24.) But her statement about her intentions does not alter the fact that she admitted she signed the arbitration agreement. (ECF No. 23 at 1.) Moreover, her protestations are inconsistent with the agreement's clear language—immediately above her signature—that describes what the document is, what it does, and warns the signer not to sign without reading it. (ECF No. 22-1.)

Silas also cites to the Touchpoint Employee handbook. She first points to a page, which indicates that the handbook itself is not a contract, and contends this language excuses her from

[2] The Court will grant Silas's motions for leave to file supplemental evidence and to file a sur-reply. (ECF Nos. 25 & 28.)

arbitrating her claims. (ECF Nos. 25 & 25-1.) This statement applies to the Touchpoint Employee handbook, not the arbitration agreement that she signed. It therefore is not relevant to determining whether the arbitration agreement she signed is in fact a contract. (ECF No. 23; 25-1; 25.) Even if, as Silas insists, the employee handbook is not a contract, (ECF No. 23), Touchpoint relies upon her separate arbitration agreement, which has a different title and clearly states, in multiple places, that it *is* a binding agreement to arbitrate all claims arising out of employment. (ECF No. 22-1.) Silas also highlights a sentence in the handbook page stating, "[t]he Company further provides reasonable accommodations to Applicants and Associates with sincerely held religious beliefs or disabilities, as required by federal, state, or local law." (ECF No. 25-1.) This is also irrelevant to the question of whether Touchpoint and Silas signed a binding arbitration agreement.

In her motion to file a sur-reply, Silas asserts that the "arbitration provision[] is an illusory and unenforceable contract because Touchpoint expressly retains the right to unilaterally alter or modify its policies at any time without excluding the arbitration protocol itself from such changes." (ECF No. 28 at 2.) This argument again conflates the employee handbook with the arbitration agreement that Silas undisputedly signed. The clause Silas references is from the employee handbook, but the employee handbook is not the arbitration agreement. Moreover, the arbitration agreement includes a clause stating: "This is the entire agreement between [the signer] and the Compass Related Entities regarding dispute resolution." (ECF No. 22-1.) Again, the line in the handbook is irrelevant. Silas has not shown that this promise is illusory, and the Wisconsin Supreme Court has long made clear that exchanging promises to arbitrate is sufficient consideration to make arbitration agreements enforceable. *Ferraro*, 368 N.W.2d at 671–72; *Michalski.*, 177 F.3d at 636.

The Court will therefore grant Touchpoint's motion to compel arbitration according to the mutual arbitration agreement and stay these proceedings pending the completion of arbitration. The Court directs the parties to meet and confer and file a joint status report when arbitration is completed, or by February 8, 2027, whichever occurs first. If Silas chooses not to pursue her claims further through arbitration, then the parties should file a notice informing the Court by February 8, 2027, so that the Court may close the case.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration and Stay the Proceedings, ECF No. 21, is **GRANTED**. If Silas wishes to pursue her claims further, she must

do so through binding arbitration, as described in the arbitration agreement. The proceedings will be stayed pending completion of arbitration.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report when arbitration is completed, or by February 8, 2027, whichever occurs first. If Silas does not pursue her claims through arbitration, the parties shall file a notice informing the Court.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Leave to File Supplemental Evidence, and to File a Sur-Reply, ECF Nos. 25 & 28, are **GRANTED**.

Dated at Milwaukee, Wisconsin on November 10, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
Chief United States District Judge